UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHARLES GRAGG; DELORES GRAGG,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**UNITED STATES OF AMERICA;**<br>**COMMISSIONER OF INTERNAL REVENUE,**<br><br>**Defendants.** | **Case No.: 12-CV-3813 YGR**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION** |

**I.     INTRODUCTION**

This is a taxpayer refund suit brought pursuant to 26 U.S.C. section 7422. During the tax years 2006 and 2007, husband-and-wife plaintiffs Charles and Delores Gragg owned two real estate rental properties. Their rental properties incurred losses, and the Graggs, in jointly filed returns, sought to deduct those losses from their otherwise taxable income. Normally, losses from real estate rental activities are considered "passive" losses under section 469 of the Internal Revenue Code[1] and may not be used to offset income (or, for that matter, portfolio gains). However, persons who "materially participate" in their rental real estate activities are not subject to this passive-loss limitation. I.R.C. § 469(c)(7). Mrs. Gragg is a qualified real estate agent. Plaintiffs' position is that Mrs. Gragg's full-time occupation as a real estate professional generally relieves her and her

---

[1] The Internal Revenue Code is codified at Title 26 of the United States Code, and the attendant Treasury Regulations are codified at Title 26 of the Code of Federal Regulations. In keeping with common practice, the Court in this opinion cites to the "I.R.C." and "Treas. Reg.," respectively.

husband from having to show material participation in their rental real estate activities before deducting losses from those activities against their income.

Presently before the Court is a third[2] motion for summary judgment filed by defendants the United States of America and the Commissioner of Internal Revenue.  (Dkt. No. 35 ("Defs. MSJ").)  Plaintiffs have filed an opposition and cross-motion for summary judgment (Dkt. No. 37 ("Pls. XMSJ"), to which defendants have replied (Dkt. No. 38 ("Defs. Reply")).[3]  The parties have stipulated to a statement of the facts of the case and agree that no disputed material fact exists.  (Dkt. No. 36 ("Stmt.").)  The Court concurs that none does.

Having fully considered the papers submitted and the argument of the parties, and for the reasons set forth herein, the Court **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross-motion for summary judgment.  Plaintiffs fail to carry their burden of showing that section 469(c)(7) of the Internal Revenue Code and related regulations excuse real estate professionals, and real estate professionals only, from the obligation of showing material participation in *each* real estate activity before deducting otherwise passive losses from that activity.

## II.     STATEMENT OF STIPULATED FACTS

1.      During the tax years 2006 and 2007, plaintiffs resided in Pleasanton, California.  For the 2006 and 2007 tax years, plaintiffs filed joint federal income tax returns with the Internal Revenue Service ("IRS").  (Stmt., Ex. 1 (2006 joint federal income tax return ("2006 Return"); *id.*, Ex. 2 (2007 joint federal income tax return ("2007 Return").)

2.      In tax years 2006 and 2007, Mr. Gragg listed his occupation as "VP of Logistics" and Mrs. Gragg listed her occupation as "real estate sales."  (*See* 2006 Return and 2007 Return, signature pages.)  For the 2006 and 2007 tax years, plaintiffs reported wage and salary income as follows:

---

[2] The Court previously entertained two rounds of cross-motions for summary judgment, but, in both rounds, denied all motions without prejudice because the parties had failed to present a record adequate for decision and asked, essentially, for an advisory opinion.  (*See* Dkt. Nos. 22, 31.)

[3] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court took the instant motions under submission without oral argument.  (Dkt. No. 39.)

| 2006 | | | |
|---|---|---|---|
| **Third Party Payor** | **Form** | **Payee** | **Amount** |
| ITRADE NETWORK INC | W-2 | Charles D. Gragg | $241,636.46 |
| Hometown GMAC Real Estate | 1099-MISC | Delores Gragg | $217,131.98 |
| 2006 Total Wage and Salary Income - Per Return | | | $458,768.44 |

| 2007 | | | |
|---|---|---|---|
| **Third Party Payor** | **Form** | **Payee** | **Amount** |
| ITRADE NETWORK INC | W-2 | Charles D. Gragg | $126,624.51 |
| Hometown GMAC Real Estate | 1099-MISC (schedule C of tax return) | Delores Gragg | $312,320.00 |
| 2007 Total Wage and Salary Income - Per Return | | | $ 438,944.51 |

3. In each of the 2006 and 2007 tax years, plaintiffs reported rental real estate loses in excess of their rental real estate income on Schedule E of the tax returns, as set out more fully in paragraphs 5 and 6 below. (2006 Return; 2007 Return.)

4. Plaintiffs did not elect to treat all interests in real estate as one activity pursuant to 26 U.S.C. § 469(c)(7)(A)(ii) and Treas. Reg. § 1.469-9(g), as no statement was filed with plaintiffs' original 2006 and 2007 joint federal income tax returns. (2006 Return; 2007 Return.)

5. On Schedule E of their joint 2006 Form 1040, plaintiffs reported the following income and expenses from their rental properties:

| **2006 – Schedule E** | **Home A – Arroyo Drive** | **Home B – Mockingbird Lane** |
|---|---|---|
| Total Rental Income Received | $12,000 | $3,600 |
| Insurance | $0 | $140 |
| Mortgage Interest Paid | $9,733 | $10,818 |
| Repairs | $2,273 | $0 |
| Taxes | $3,330 | $1,400 |
| Utilities | $0 | $80 |
| HOA | $2,340 | $0 |
| Depreciation Expense or Depletion | $8,039 | $0 |
| **Total Schedule E Deductions** | **$25,715** | **$12,438** |

6. On Schedule E of their joint 2007 Form 1040, plaintiffs reported the following income and expenses from two rental properties, one of which is located in Atlanta, GA:

///

3

| 2007 – Schedule E | Home A – Arroyo Drive | Home B – Society Circle |
|---|---|---|
| Total Rental Income Received | $15,000 | $5,000 |
| Auto and Travel | $0 | $3,600 |
| Cleaning and Maintenance | $0 | $150 |
| Insurance | $0 | $227 |
| Mortgage Interest Paid | $10,463 | $3,773 |
| Repairs | $650 | $0 |
| Taxes | $3,409 | $1,520 |
| Utilities | $0 | $1,520 (*sic*) |
| HOA | $2,340 | $1,134 |
| Warranty | $350 | $0 |
| Depreciation Expense or Depletion | $8,005 | $3,249 |
| **Total Schedule E Deductions** | **$25,217** | **$15,173** |

7. In 2009, the IRS conducted an audit of plaintiffs' 2006 and 2007 tax returns. The audit issues included rental income, property taxes, sale of property, and passive activity loss. The sole issue relevant to this refund suit is the passive activity loss. As an initial part of the audit, the IRS requested documents from plaintiffs relevant to the passive activity loss. (Stmt., Ex. 3.)

8. During the audit, the Power of Attorney for Mrs. Gragg was interviewed concerning the Schedule E real estate losses. Based on that discussion and a review of the documents provided (Real Estate Salesperson License, a note "760 Mockingbird Lane, Pleasanton" and a note "The following are the duties that I performed for 8031 Arroyo Dr. Pleasanton in 2006"), the IRS noted that Mrs. Gragg would not be able to pass the material participation test based on the documents provided. (Stmt., Ex. 4.)

9. Mrs. Gragg also provided a facsimile transmission from Bologna Accountancy Corporation, a Real Estate Salesperson License, a letter from Hometown/GMAC Real Estate and a letter from Keller Williams, to establish that "[t]hey do meet material participation under Regulation 1.469-5T of the Internal Revenue Code." (Stmt., Ex. 5.)

10. The IRS auditor concluded:

> Rental activities of any kind, regardless of material participation, are considered passive activities unless the requirements of section 469(c)(7) of the Internal Revenue Code are met in tax years beginning after December 31, 1993.
> Passive losses can only be offset against passive income. A passive activity is one involving the conduct of a trade or business in which you do not materially participate, or any rental activity unless

4

> the requirements of section 469(c)(7) of the Internal Revenue Code are met in tax years beginning after December 31, 1993.

(Stmt., Ex. 6.)

11. For the 2007 tax year, the IRS arrived at the same conclusion:

> Passive losses and credits can be offset by passive income (or in the case of credits, to the tax attributable to net passive income). Passive losses are also allowed to the extent they qualify for the special allowance for rental real estate activities and the transitional phase-in rule for activities acquired before October 23, 1986. They cannot be used to offset portfolio income. Since your losses from such activities were in excess of the [*sic*] passive income, the special allowance, and the phase-in-rule, the excess loss has been denied. You may carry forward the amount of the loss you were unable to claim.
> Rental activities of any kind, regardless of material participation, are considered passive activities unless the requirements of section 469(c)(7) of the Internal Revenue Code are met in tax years beginning after December 31, 1993.

(Stmt., Ex. 7.)

12. The IRS made adjustments to plaintiffs' 2006 federal income tax liability, including adjustments for "Real Estate Loss After Passive Limitation," in the amounts of $8,838 and $13,715, resulting in a tax deficiency of $14,874. (Stmt., Ex. 8.)

13. The IRS made an adjustment to plaintiffs' 2007 federal income tax liability, including an adjustment for "Real Estate Loss After Passive Limitation," in the amount of $20,390, resulting in a tax deficiency of $43,499. (Stmt., Ex. 9.)

14. The IRS assessed additional federal income tax for 2006 in the amount of $14,874, on or about December 28, 2009. (Stmt., Ex. 10.)

15. The IRS assessed additional federal income tax for 2007 in the amount of $43,499, on or about February 2, 2010. (Stmt., Ex. 11.)

16. A notice of deficiency for the 2006 tax year was issued to plaintiffs on September 28, 2009. (Stmt., Ex. 12.) Plaintiffs did not petition the Tax Court in response to the notice. The additional tax assessed, plus interest and penalty, was fully paid, resulting in a zero balance to the 2006 tax account. (Stmt., Ex. 10; *see also* Dkt. No. 10 ("Answer") ¶ 3.)

17. A notice of deficiency for the 2007 tax year was issued to petitioners on July 30, 2009. (Stmt., Ex. 13.) Plaintiffs did not petition the Tax Court in response to the notice. The

additional tax assessed, plus interest and penalty, was fully paid, resulting in a zero balance to the 2007 tax account.  (Stmt., Ex. 11; *see also* Answer ¶ 3.)

18. Plaintiffs filed a Claim for Refund, Form 843, dated June 23, 2011, for tax years 2006 and 2007.  The basis for the claim was: "Taxpayer is a real estate professional and as such is not subject to the passive loss limitations which the IRS disallowed."  The Form 843 asks that the claim be immediately denied to allow plaintiffs to proceed with this refund suit.  (Stmt., Ex. 14.)

19. The claim was disallowed by notice dated November 23, 2011, and this suit for refund subsequently was filed.  (Stmt., Ex. 15.)

20. By this action, plaintiffs seek a refund of $10,000 for the 2006 tax year, plus statutory interest as provided by law, and a refund of $10,000 for the 2007 tax year, plus statutory interest as provided by law.  (Dkt. No. 1 (Complaint), Prayer for Relief.)

21. Defendants do not dispute that Mrs. Gragg was a real estate professional under I.R.C. § 469(c)(7) for both the 2006 and 2007 tax years.

## III.   LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment procedures are appropriate where, as here, no dispute of material fact exists and the parties' dispute hinges on the resolution of a question of law.  *See Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003); *In re Comark*, 971 F.2d 322, 324-25 (9th Cir. 1992).

In a tax deduction case such as the one at bar, the taxpayer bears the burden of establishing her entitlement to a deduction under the Internal Revenue Code.  *Maciel v. C.I.R.*, 489 F.3d 1018, 1028 (9th Cir. 2007); *Talley Indus. Inc. v. C.I.R.*, 116 F.3d 382, 387-88 (9th Cir. 1997); *Norgaard v. C.I.R.*, 939 F.2d 874, 877 (9th Cir. 1991).  "If evidence to establish a deduction is lacking, the taxpayer, not the government, suffers the consequence."  *Talley Indus.*, 116 F.3d at 387-88.

## IV.   DISCUSSION

The key question for decision is whether, pursuant to section 469(c) of the Internal Revenue Code and related regulations, plaintiffs must establish their material participation in their

rental real estate activities separate and apart from Mrs. Gragg's undisputed material participation in her profession as a real estate agent. As set forth below, the Court concludes that they must, but have not.

### A. RELEVANT HISTORY AND STRUCTURE OF SECTION 469(C)

Enacted as part of the Tax Reform Act of 1986, section 469 established a general rule that losses from "passive activities" could not be used to offset income from active sources and portfolio gains. *See* I.R.C. § 469, entitled "Passive Activity Losses and Credits Limited," paragraphs (a) and (e). Passive activities are defined in paragraph (c):

> (1) The term "passive activity" means any activity—
>
>   (A) which involves the conduct of any trade or business, and
>
>   (B) in which the taxpayer does not materially participate.

I.R.C. § 469(c)(1). Subparagraph (2) then specifically creates a per se categorization: "The term 'passive activity' includes any rental activity," regardless of whether the taxpayer materially participates in them. *See* I.R.C. § 469(c)(2).[4] However, while passive losses could not offset income generally, passive losses which exceeded the related passive income could be carried forward indefinitely for use in subsequent years. *See* I.R.C. § 469(b); Treas. Reg. § 1.469-1T.

By treating all rental activities as passive, the Tax Reform Act, as originally enacted, "created problems among real estate professionals." *Pungot v. C.I.R.*, 79 T.C.M. (CCH) 1558 (T.C. 2000). "A full-time real estate developer, for example, could not use losses from one aspect of his business; i.e., renting properties, to offset income from another aspect of his business; i.e., developing real estate, except to the extent of" a $25,000 allowance provided at I.R.C. § 469(i). *Id.* "By contrast, a taxpayer who materially participated in any other trade or business could use losses incurred in that business against active income." *Id.* "To 'alleviate this unfairness,' Congress

///
///
///

---

[4] "Rental activity" is a defined term meaning "any activity where payments are principally for the use of tangible property." I.R.C. § 469(j)(8).

modified the passive loss rules by adding subparagraph (7) to section 469(c), effective for tax years beginning after December 31, 1993." *Id.* (quoting H.R. REP. NO. 103-111, at 614 (1993)).[5]

Subparagraph 469(c)(7), titled "Special rules for taxpayers in real property business," provides a mechanism for removing one's rental real estate activities from the scope of paragraph (c)(2)'s per se categorization of rental activity as passive activity. Paragraph (c)(7) describes the taxpayers for whom the mechanism is available:

> (B) This paragraph shall apply to a taxpayer for a taxable year if—
>
> > (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses **in which the taxpayer materially participates**, and
> >
> > (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses **in which the taxpayer materially participates**.

I.R.C. § 469(c)(7)(B) (title omitted; emphasis supplied).[6]

Paragraph (h) of section 469 then defines "material participation":

> A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is
>
> (A) regular,
>
> (B) continuous, and
>
> (C) substantial.

I.R.C. § 469(h)(1). In interpreting section 469(h)(1)'s requirement of regular, continuous, and substantial involvement, the Treasury Department has established by regulation a set of seven "safe harbors." *See* Treas. Reg. § 1.469-5T(a); *see also id.* § 1.469-9(b)(5) (defining "material participation" by incorporating Treas. Reg. § 1.469-5T); *Mordkin v. Comm'r of Internal Revenue*,

---

[5] Paragraph (c) of section 469, which defines the contours of "passive activity," contains subparagraphs (1) through (7).

[6] Subparagraph (c)(7)(B)'s concluding language then provides, in pertinent part: "In the case of a joint return, the requirements of the preceding sentence are satisfied if and only if either spouse separately satisfies such requirements." *Id.* Here, the record establishes that the Graggs filed joint returns but that they rely solely upon Mrs. Gragg's activities to satisfy the requirements of subparagraph (B). (*See* Stmt. ¶¶ 1, 8-9; Pl. XMSJ at 3.)

8

71 T.C.M. (CCH) 2796 (T.C. 1996) (upholding validity of section 1.469-5T safe harbors).  A taxpayer who satisfies the conditions of any one of them can establish material participation in a rental real estate activity.  Treas. Reg. § 1.469-5T(a).[7]

Thus, a taxpayer who falls within the scope of subparagraph (c)(7)(B) for a particular year can avoid having their rental activities treated as per se passive activities "for such taxable year."  I.R.C. § 469(c)(7)(A).  However, the statute does require treatment of "each interest of the taxpayer in rental real estate" as "a separate activity" unless the taxpayer "elect[s] to treat all interests in rental real estate as one activity."  I.R.C. § 469(c)(7)(A)(ii) and concluding paragraph.

---

[7] Treasury Regulations section 1.469-5T(a) provides:

> [A]n individual shall be treated, for purposes of section 469 and the regulations thereunder, as materially participating in an activity for the taxable year if and only if—
>
> (1) The individual participates in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;
>
> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;
>
> (4) The activity is a significant participation activity (within the meaning of paragraph (c) of this section) for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;
>
> (5) The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;
>
> (6) The activity is a personal service activity (within the meaning of paragraph (d) of this section), and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or
>
> (7) Based on all of the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.

9

Under this framework, the Court now turns to the question of whether a taxpayer who materially participates in a real estate trade or business is automatically exempted from having her rental real estate losses categorized as passive losses, or whether the taxpayer must demonstrate material participation in the rental real estate activities separately from her material participation in her primary occupation in a real estate trade or business.

**B.    APPLICATION OF SECTION 469(C) AND REGULATIONS**

The Graggs' primary contention is that Mrs. Gragg's status as a full-time real estate agent establishes her material participation in a qualifying real estate trade or business, such that she need not "requalify"—that is, demonstrate material participation in *each* of her separate real estate rental activities.[8]  Defendants contend that plaintiffs, notwithstanding Mrs. Gragg's occupation, must separately establish material participation as to their two rental properties for 2006 and 2007.

Defendants are correct.  As described above, section (c)(7)(A)(ii) requires that the analysis regarding rental activity for taxpayers in the real property business "shall be applied as if each interest of the taxpayer in rental real estate were a separate activity" unless the taxpayer makes an affirmative election "to treat all interests in rental real estate as one activity."  Here, the parties stipulate that the Graggs did not make such an election.  (Stmt. ¶ 4.)  Thus, given the lack of an election, section 469's rules on passive losses must be applied as if each of the Graggs' interests in rental real estate were a separate activity.

Plaintiffs contend that "Mrs. Gragg's real estate rental activity is encompassed within her profession as a real estate agent" and that, therefore, "she has already met the material participation requirement by previously qualifying for all activities that fall within the scope of that profession." (Pls. XMSJ at 3.)  Treasury Regulation section 1.469-9 forecloses plaintiffs' position. Subparagraph (e)(3) of that regulation, titled "Grouping rental real estate activities with other activities," provides, in pertinent part:

---

[8] The parties have stipulated that Mrs. Gragg was "a real estate professional under [I.R.C.] § 469(c)(7) for both the 2006 and 2007 tax years."  (Stmt. ¶ 21.)  The term "real estate professional" is not used in section 469(c)(7), but the Court understands the parties' stipulation to signal their agreement that Mrs. Gragg satisfied the requirements of section 469(c)(7)(B) as to her professional real estate activities (that is, her occupation as a real estate agent) by spending more than half of her working time and in excess of 750 hours performing personal services in that capacity.

10

> For purposes of this section, a qualifying taxpayer may not group a rental real estate activity with any other activity of the taxpayer. For example, if a qualifying taxpayer develops real property, constructs buildings, and owns an interest in rental real estate, the taxpayer's interest in rental real estate may not be grouped with the taxpayer's development activity or construction activity. **Thus, only the participation of the taxpayer with respect to the rental real estate may be used to determine if the taxpayer materially participates in the rental real estate activity under § 1.469-5T.**

Treas. Reg. § 1.469-9(e)(3)(i) (emphasis supplied).

The regulation's example is directly applicable here. The regulation contemplates a taxpayer who, like Mrs. Gragg, works in a real estate occupation but also "owns an interest in rental real estate." Under the regulation, these two activities are separate and distinct, and may not be grouped together. Plaintiffs' construction of section 469 would contravene the regulation's guidance by treating Mrs. Gragg's rental real estate activities as part of her other activities, namely, her activity of performing personal services as a real estate agent.

Though Tax Court cases do not bind this Court,[9] the Court finds persuasive the reasoning of a Tax Court case squarely addressing the question now at bar, *Perez v. Commissioner of Internal Revenue,* T.C. Memo. 2010-232, 100 T.C.M. (CCH) 351 (2010). In *Perez*, the taxpayer was self-employed during a certain tax year as a real estate loan agent and broker, and also owned three residential rental properties. The taxpayer there, as here, "reported her income and loss from her real estate business on her . . . Schedule C" and reported income and expenses from her residential properties on Schedule E . . . ." The taxpayer deducted losses from her rental properties in the amount of $45,199, which deduction the IRS disallowed. The parties stipulated that in the relevant tax year the taxpayer "was a real estate professional pursuant to section 469(c)(7)(B)." The parties further agreed that the taxpayer "did not meet the 'material participation' tests described in [Treasury Regulation] 1.469–5T . . . with respect to her rental real estate activities."

---

[9] *See, e.g., Esgar Corp. v. C.I.R.*, --- F.3d ---, 2014 WL 889614, at *3 (10th Cir. Mar. 7, 2014) ("[T]he Supreme Court has counseled that, while the Tax Court's decisions may not be binding precedents for courts dealing with similar problems, uniform administration would be promoted by conforming to them where possible. Rulings by the Tax Court on matters of tax law are therefore persuasive authority, especially if consistently followed." (brackets, internal quotation marks, and citations omitted)); *see also Hubbard v. United States*, 359 F. Supp. 2d 1123, 1127 n.5 (W.D. Wash. 2005) aff'd, 209 F. App'x 660 (9th Cir. 2006) ("Except for res judicata issues, Tax Court precedent does not bind a United States District Court" but "may serve as persuasive authority.").

The Tax Court, after surveying the statutory and regulatory framework, concluded that the IRS was correct to disallow the deduction. The taxpayer argued that she need not satisfy the material participation requirement of section 469 with respect to her real estate rental activities because, as "a qualifying real estate professional pursuant to section 469(c)(7)(B), all her real estate activities, including rental activities, [were] not passive . . . ." The Tax Court rejected that position, holding that, even if it were to accept the taxpayer's view that "section 469(c)(7)(B) exempts real estate professionals who own real estate and manage it as part of their profession from the material participation requirement of section 469(c)(1)," such a rule would not exempt the taxpayer because her "activity as a real estate loan agent and broker [was] separate from her activity as the owner of three residential real estate properties." Citing Treasury Regulation section 1.469-9(e)(3)(i), the Tax Court observed that the taxpayer was required to show material participation in her rental real estate activities because she did "not own or manage the three residential real estate properties as part of her profession as a real estate loan agent and broker but rather own[ed] those properties independent of her profession."

*Perez* is directly on point. Mrs. Gragg, like the petitioner in *Perez*, owns her interest in the two subject rental real estate properties regardless of her occupation as a real estate agent. If Mrs. Gragg had surrendered her real estate agent's license in the middle of 2006, she still would have owned her interest in the rental properties. Her personal interests in her rental real estate properties are not coupled with or dependent upon the personal services she renders to clients as a real estate agent. The mere fact that both relate to real estate does not suffice to establish Mrs. Gragg's material participation in each *separate* activity in which she participated. Treas. Reg. § 1.469-9(e)(3)(i).

Plaintiffs contend that *Perez* was wrongly decided, but their argument fails to persuade. Plaintiffs contend that it is "illogical" and "based on a faulty premise" because the Tax Court there analogized the taxpayer's "unique situation to cases with dissimilar facts, yet call[ed] it 'similar' . . . ." Plaintiffs' criticism of *Perez* fails to grasp the unremarkable principle that whenever a court analogizes to a case, it does so precisely because the case is similar but non-identical. Were the cases identical, no analogy would be required.

Plaintiffs also criticize the *Perez* court, contradictorily, for having failed to analogize to *Pungot*, a case cited by the taxpayer in *Perez* as well as this one, notwithstanding its factual and legal dissimilarity. However, plaintiffs cite *Pungot* only for its gloss on the legislative history of section 469(c)(7), which this Court has considered. Nothing in the *Pungot* opinion persuades the Court that plaintiffs correctly interpret section 469(c)(7) or Treasury Regulation section 1.469-9(e)(3)(i). At most, *Pungot* lends support to the notion that Congress sought to rectify an unfairness in the tax code's treatment of real estate professionals vis-a-vis persons in other businesses. From that premise, however, it does not follow, as a matter of law or of logic, that *every* real estate professional is entitled to deduct losses from rental real estate properties. Rather, statute and regulation determine when losses from rental real estate activities may be deemed non-passive and, thus, deductible against income not specifically tied to the passive asset. As set forth above, those rules require a showing of material participation in the rental real estate activity before the deduction may be taken in such a manner.

For the reasons set forth above, the Court holds that, in order to deduct losses from a rental real estate activity against the income declared in the tax years 2006 and 2007, plaintiffs were required to establish their material participation in each such rental real estate activity.

### C.   EVIDENCE OF MATERIAL PARTICIPATION

The Graggs are less than clear about whether they seek to establish their material participation in their real estate activities pursuant to the seven safe harbors set forth in Treasury Regulation section 1.469-5T. On the one hand, plaintiffs specifically state that Mrs. Gragg "does not contend that she meets the material participation requirements set forth in [Treas. Reg.] § 1.469-5T for each rental real estate activity." (Pls. XMSJ at 4.) Yet plaintiffs then set out to demonstrate that Mrs. Gragg used "reasonable means to show the time and activities dedicated to each rental real estate property." (*Id.*) Defendants contend that, to the extent Mrs. Gragg seeks now to demonstrate her material participation in her rental real estate activities, the means she seeks to use are not reasonable, as required by Treasury Regulation section 1.469-5T(f)(4), because they are post hoc estimates of the amount of time she spent dealing with the rental properties rather than contemporaneous records.

The Court agrees with defendants. A taxpayer may demonstrate the extent of her participation in an activity "by any reasonable means." Treas. Reg. § 1.469-5T(f)(4). The Tax Court has long and consistently held that backwards-looking "post-event ballpark guesstimates," unsupported by reliable and contemporaneous records, do not suffice as a "reasonable means" of demonstrating the scope of one's participation in an activity pursuant to section 469. *E.g.*, *Almquist v. C.I.R.*, T.C.M. (RIA) 2014-040 (T.C. 2014) (reciting the "ballpark guestimate" formulation); *Moss v. C.I.R.*, 135 T.C. 365, 369 (2010) (same); *Smith v. C.I.R.*, 14306-12S, 2014 WL 642818 (T.C. Feb. 19, 2014) (same). Tax Court cases are merely persuasive authority, but, based on this record, the Court sees no reason to deviate from the Tax Court's well-established rule, which, particularly in light of concerns over uniform nationwide application of tax rules, is due an appropriate measure of deference. *See Esgar Corp.*, --- F.3d ---, 2014 WL 889614, at *3. Plaintiffs seek to distinguish the government's proffered authority. Even if the particular cases cited were distinguishable, the rule cited is well-established and applies here.

Applying the rule, then, the Court concludes that the documents provided by Mrs. Gragg that address her rental real estate activities, as opposed to her participation in her profession as a real estate agent, amount to unreliable post hoc reconstructions of time spent. In connection with an initial taxpayer interview conducted April 10, 2009, Mrs. Gragg supplied a signed but undated note stating that, with respect to the Graggs' Mockingbird Lane property, in 2006 her "estimated hours were approx[imately] 40 hours" for two months that the house was rented and "approx[imately] 100 hours" after the tenants moved out. (Stmt., Ex. 4.) She also supplied another signed but undated note representing that in 2006 her duties with respect to the Arroyo Drive property amounted to "approx[imately] 200 hours" dealing with tenant problems that culminated in an eviction and "[a]pprox[imately] 300 [hours]" restoring the property thereafter. The record does not reflect any estimates of hours covering the tax year 2007. As to the records covering 2006, no basis for their method of calculation has been supplied, nor do they bear internal indicia of being anything other than guesses of the approximate number of hours spent. Consequently, the Court concludes that the post hoc estimates proffered by Mrs. Gragg are, as a matter of law, not "reasonable means" of showing her material participation.

14

The Court finds that the Graggs have not met their burden of demonstrating material participation in each of their rental real estate activities during the tax years 2006 and 2007. Such demonstration being required pursuant to section 469(c)(7) and applicable Treasury Regulations, the Court holds that defendants are entitled to judgment as a matter of law.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment of Defendants the United States of America and the Commissioner of Internal Revenue and **DENIES** the cross-motion for summary judgment of Plaintiffs Charles Gragg and Delores Gragg.

Defendants shall prepare a proposed form of Judgment and submit it to plaintiffs for approval as to form. It shall be filed within seven days of entry of this Order.

This Order terminates Dkt. No. 35.

**IT IS SO ORDERED**.

Date: March 31, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**